**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 96-40735

_____


YANKEE ENTERPRISES, INC.,

Plaintiff-Appellant-Cross-Appellee,


VERSUS


DUNKIN' DONUTS, INC.,

Defendant-Appellee-Cross-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(1:95-CV-136)

_____

July 8, 1997

Before KING, DAVIS and DeMOSS, Circuit Judges.

DAVIS, Circuit Judge:[*]

In this litigation between a franchisor and a franchisee, which resulted in a verdict in favor of the franchisee, we consider the propriety of the district court's post verdict orders rejecting the jury's award under the Texas Deceptive Trade Practices Act ("DTPA") and entering judgment against the franchisor on franchisee's breach of contract claim. For the reasons that

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.

follow, we conclude that the evidence will not support any award in franchisee's favor.

## I.

Dunkin' Donuts Incorporated ("Dunkin'") is a franchisor that franchises donut shops nationwide. Yankee Enterprises ("Yankee") is a Dunkin' franchisee that operates a Dunkin' Donuts store in Beaumont, Texas. Dunkin' divides the nation into five zones: Northeast, Midwest, Mid-Atlantic, Southeast, and West. Beaumont, Texas, is located in Dunkin's West zone. In 1986, Yankee, a Dunkin' franchisee since 1972, renewed its franchise for twenty years. According to the franchise agreement, Dunkin' promised to "continue its efforts to maintain high and uniform standards of quality, cleanliness, appearance and service at all Dunkin' Donuts shops."

In 1994, Yankee brought suit against Dunkin', asserting that Dunkin' had breached the franchise agreement and violated the DTPA. Yankee contended that Dunkin' had reduced personnel in the West zone, failed to properly supervise franchises in the West zone, and diverted resources and attention away from the West zone to the Northeast zone. According to Yankee, these actions constituted a breach of the franchise agreement -- in particular, Dunkin's pledge to "continue efforts" to maintain standards -- and a violation of the DTPA.

2

A jury found that Dunkin' had failed to comply with the franchise agreement and had committed violations of the DTPA; accordingly, the jury awarded Yankee damages. Yankee moved for entry of judgment on the verdict, and Dunkin' moved for judgment as a matter of law. The court granted Dunkin's motion on the DTPA claim, but rejected Dunkin's motion on the breach of contract claim and entered judgment on the verdict on this claim. Both parties appealed. We consider their arguments below.

## II.

Yankee first argues that the district court erred in granting Dunkin's motion for a judgment as a matter of law on Yankee's DTPA claim. The jury found that Dunkin' violated § 17.46 of the DTPA by engaging in "[f]alse, misleading, or deceptive act or practices in the conduct of any trade or commerce" and that Dunkin violated § 17.50 of the DTPA by engaging in "unconscionable" activities.

Yankee argues that the record supports the verdict on its § 17.46 misrepresentation claim. According to Yankee, Dunkin' violated its promise to maintain standards of cleanliness, quality, and appearance in the West zone by drastically reducing personnel in the West zone, cutting back supervision of the West zone, and diverting its financial resources away from the West to the Northeast zone. In essence, Yankee argues that Dunkin's conduct demonstrates that it misrepresented its intention to perform under the contract. As the Supreme Court of Texas stated in <u>Crawford v.</u>

3

<u>Ace Sign, Inc.</u>, 917 S.W.2d 12, 14-5 (Tex. 1996), "[t]o accept this reasoning, however, would convert every breach of contract into a DTPA claim." <u>Crawford</u> instructs that a claim only for breach of contract is insufficient to violate § 17.46(a) of the DTPA. <u>Crawford</u>, 917 S.W.2d at 14-5. We conclude that Yankee presented nothing more than a claim for breach of contract in support of its § 17.46(a) misrepresentation action. Accordingly, we affirm the district court's order setting aside the jury's verdict on the misrepresentation prong of the DTPA claim.

Yankee also argues that the district court erred in setting aside the jury's finding that Dunkin' engaged in unconscionable activity that was the producing cause of Yankee's damages in violation of § 17.50 of the DTPA. The two means of engaging in unconscionable conduct under the DTPA are: (1) taking advantage of the lack of knowledge, ability, experience, or capacity of a person to a *grossly unfair degree;* or, (2) taking action which results in a *gross disparity* between the value received and consideration paid, in a transaction involving transfer of consideration. See Tex. Bus. & Com. Code Ann § 17.45.

Yankee asserts that a gross disparity exists between the franchise it received and the consideration it paid because Dunkin' did not maintain the standards of quality, cleanliness, and appearance promised in the franchise agreement. We reject this claim, without deciding whether Dunkin' did indeed fail to maintain

4

the standards Yankee contracted for, because Yankee produced no evidence of the value of franchise it received. With no evidence of the value received, the jury could not determine that there was a gross disparity between the consideration paid and the value received.

Yankee also contends that Dunkin used its superior bargaining power to take advantage of Yankee to a grossly unfair degree. Under the DTPA it is insufficient for Yankee to show that Dunkin' treated Yankee unfairly; Yankee must show that the unfairness was "glaringly noticeable, flagrant, complete, and unmitigated." Chastain v. Koonce, 700 S.W.2d 579, 583 (Tex. 1985). Our review of the record convinces us that any unfairness suffered by Yankee did not rise to the level of gross unfairness. Thus, we also affirm the district court's order setting aside the jury's verdict for Yankee on the unconscionability prong of the DTPA claim.[1]

### III.

On cross-appeal, Dunkin' contends that Yankee presented no competent evidence to support the jury's finding that Dunkin's breach of the franchise agreement caused Yankee to suffer damages.[2]

---

[1]The district court's money judgment in favor of Yankee included the sum of $132,070 awarded by the jury as part of Yankee's DTPA claim. This was apparently an oversight by the district court because including this award is inconsistent with its order setting aside the jury's verdict on Yankee's DTPA claim.

[2]Dunkin also argues that there is insufficient evidence to support the jury's conclusion that it breached the franchise agreement. Because we conclude that jury verdict must be reversed on other grounds, we do not address this issue.

Yankee argued at trial that Dunkin' had breached its promise in the franchise agreement to "continue efforts to maintain high and uniform standards of quality, cleanliness, appearance and service at all Dunkin' Donut shops."  More particularly, Yankee argued that Dunkin' diverted its attention and resources to the Northeast and failed to continue efforts in the West zone, where Yankee was located, and this failure caused Yankee to lose sales.

Yankee began with a suspect causation theory:  The reduced standards of cleanliness in the other stores in the West zone damaged Yankee's sales even though Yankee's store met or exceeded the high standards in place prior to the alleged breach.[3]  In support of this contention, Yankee produced the testimony of John Croley, its expert witness on damages.  Although Yankee contended that Dunkin's breach began in 1989 or 1990,  Croley compared Yankee's average weekly sales for the years 1984 through 1996 to the sales of the average store in the Northeast zone.  Croley testified that Yankee's store was comparable to that of the average store in the Northeast zone because in 1984 Yankee's average weekly sales were only $229 less than the average weekly sales of the Dunkin franchises located in the Northeast zone. Croley testified that the difference in sales between the "comparable" Northeastern

---

[3]Another Dunkin' franchisee testified that a customer who had a bad experience in another Dunkin' shop in the West zone may not stop at a Dunkin shop while driving through Beaumont.  Other than this vague testimony we find no support for Yankee's theory that reduced standards in other shops in the West caused a substantial sales reduction in Yankee's shop.  No proof was presented to explain or substantiate the details of this theory.

6

stores and Yankee's store increased from 1984 through 1996.  He attributed this increased difference to Dunkin's failure to continue its efforts to maintain high standards in the West zone.

But Yankee's expert did not fare well in cross examination. First, the "gap" between the comparable Northeast store and Yankee's store existed at least four years before Dunkin's breach, which allegedly occurred in 1989 or 1990.  It is obvious, and Croley admitted, that the diminution in sales that occurred from 1984 through 1988 cannot be attributed to an event that took place in 1989.  The expert also admitted he did not consider a number of factors (other than the difference in standards between Northeast stores and West stores) that could account for the "gap."  These factors include, but are not limited to, a difference in management skill between the hypothetical Northeast store and Yankee's store; a difference in market penetration; and a difference in volume of advertising.

In sum, Croley's theory, that Dunkin's breach caused the "gap," is nothing more than conjecture and surmise.  Because we conclude that Yankee has produced no credible evidence that the damages claimed are causally related to Dunkin's alleged breach of contract, the judgment predicated on breach of the franchise agreement cannot stand.

## IV.

We conclude that the evidence is insufficient to support the

7

jury's finding that Dunkin' engaged in conduct that violated the DTPA.  We therefore affirm the district court's order setting aside the jury verdict on those claims.  We also conclude that there is no credible evidence to support the jury's finding that Dunkin's alleged breach of contract caused Yankee to suffer damages.[4]  Accordingly, we reverse the judgment entered on the breach of contract claim and render a take nothing judgment in favor of Dunkin'.

**AFFIRMED in part, REVERSED and RENDERED in part.**

---

[4]It follows from the rejection of Yankee's breach of contract claim that the district court correctly denied Yankee's claim for attorney's fees.